**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-1877

MUMINATOU BAH,

Plaintiff – Appellant,

v.

SAMPSON BLADEN OIL COMPANY, INC., d/b/a Han-Dee Hugo's,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina at Raleigh.  Louise W. Flanagan, District Judge.  (5:23−cv−00330−FL−RN)

Argued:  March 18, 2026                           Decided:  May 29, 2026

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Gilda Adriana Hernandez, LAW OFFICES OF GILDA A. HERNANDEZ, PLLC, Cary, North Carolina, for Appellant. Nathaniel J. Pencook, NELSON MULLINS RILEY & SCARBOROUGH LLP, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Matthew S. Marlowe, Hannah B. Simmons, LAW OFFICES OF GILDA A. HERNANDEZ, PLLC, Cary, North Carolina, for Appellant. Phillip J. Strach, Jordan A. Koonts, NELSON MULLINS RILEY & SCARBOROUGH LLP, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff Muminatou Bah brought suit against her employer, Sampson Bladen Oil Co. ("Sampson Bladen"), alleging multiple claims under Title VII and the North Carolina Retaliatory Employment Discrimination Act ("REDA") for adverse employment actions. Specifically, Bah alleges that Sampson Bladen gave her lower-performing stores and subsequently terminated her employment based on her race and in retaliation for complaints she levied regarding overtime pay.

But, in weaving her tale, Bah failed to contend with her documented history of poor communication and the egregious and disturbing conditions of one of her store locations. It was on these grounds that her employer premised her termination. Because Bah did not establish that these legitimate reasons were pretextual, and because Bah never made a qualifying REDA complaint, the district court granted summary judgment in favor of Sampson Bladen. The district court performed a careful analysis of the facts and legal standards in this case. We therefore affirm.

I.

The district court's factual narrative accorded plaintiff the benefit of inferences on summary judgment, and we thus adopt the district court's recital with appreciation. To briefly summarize, Bah, a black Gambian woman, began employment at Sampson Bladen in 2011 as a store manager. In 2017, the company promoted her to district manager. Bah received largely positive performance evaluations throughout her tenure, although her supervisors repeatedly noted that she needed to improve her communication skills. In 2021,

2

however, Bah's performance evaluations suffered a noticeable decline from between "Satisfactory" and "Excellent" to between "Needs Improvement" and "Satisfactory." J.A. 473–79, 1141.

During Bah's employment as a district manager, Sampson Bladen required her to assume supervision of Store 98 after two white district managers were allowed to decline this responsibility. Bah claims that this store was underperforming and that once she bettered conditions, Sampson Bladen attempted to swap her district and remove Store 98 from her supervision. Despite these alleged efforts, Bah always retained supervision of Store 98.

Bah also supervised Store 80. In June 2022, Sampson Bladen discovered flagrant violations of company policy at this facility. Employees were living at the same address despite a prohibition on hiring such situated individuals. One employee had been intoxicated on the job and urinated on the floor. A largely AWOL store manager falsified employee timesheets in exchange for drugs and asked an employee to buy him a firearm which he could not otherwise legally acquire. J.A. 485–87, 496, 505, 510. One company official called these conditions "the worst [he] had ever seen." J.A. 440, 1143. But Bah claimed ignorance. Ignorance in spite of her responsibilities to supervise the facility and its store manager. And all of this came on the heels of another failure earlier in 2022: the discovery of improper cigarette sales in various Sampson Bladen locations, including Bah's stores.

After unearthing these violations, Sampson Bladen terminated Bah's employment on July 7, 2022, citing "[p]erformance issue[s]," including "[c]ontinuous failure[s]" to

3

ensure compliance with company policies and procedures and to communicate effectively with superiors. J.A. 1143, 2182.

## II.

We review a grant of summary judgment *de novo*, construing all facts and making all inferences in the light most favorable to Bah, the nonmoving party. *Hood-Wilson v. Bd. of Trs. of Cmty. Coll. of Balt. Cnty.*, 162 F.4th 101, 105 (4th Cir. 2025). We agree with the district court's thorough analysis, which we briefly outline below.

## A.

Under *McDonnell Douglas Co. v. Green*, 411 U.S. 792 (1973), Title VII discrimination claims based on circumstantial evidence must pass a three-stage test in order to survive summary judgment. First, the plaintiff must establish a *prima facie* case of discrimination. Assuming such a case exists, the defendant then has the opportunity to furnish a legitimate, nondiscriminatory rationale for the adverse employment action. If the defendant meets its burden of production, the plaintiff must then establish that the defendant's proffered rationale was merely a pretextual guise for underlying discrimination. *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308–09 (2025). While Bah met her *prima facie* burden, she did not provide adequate evidence of pretext.

To establish a *prima facie* case of discrimination, a plaintiff must make four showings: (1) that she belongs to a protected class, (2) that she was subject to an adverse employment action, (3) that she had been meeting her employer's legitimate expectations, and (4) that circumstances raise a reasonable inference that the adverse action constitutes

4

unlawful discrimination. *Hood-Wilson*, 162 F.4th at 105. The district court appropriately found that Bah met this minimum threshold.

First, no one contests Bah's membership in a protected class. Second, Bah established viable adverse employment actions in the form of the additional burden of Store 98 and her ultimate termination. Third, Bah's positive performance evaluations and salary raises highlight that she fulfilled her employer's legitimate expectations. And lastly, the fact that individuals outside Bah's protected class were allowed to decline supervision of Store 98 and that such an individual replaced Bah as district manager raise a reasonable inference of unlawful discrimination. *See Miles v. Dell, Inc.*, 429 F.3d 480, 487–88 (4th Cir. 2005).

Next, the district court found that Sampson Bladen had met its burden to produce evidence supportive of a legitimate, nondiscriminatory rationale for the adverse employment actions. Sampson Bladen required Bah to supervise Store 98 to ensure a more efficient allocation of resources. Bah oversaw eight stores; the white district managers who were allowed to decline the additional responsibility oversaw ten. Furthermore, Sampson Bladen terminated Bah because of her consistent issues with communication and the egregious conditions at Store 80. As the district court observed, a company official attested that the "issues at Store 80 were the worst [he] had ever seen in [his] time with [Sampson Bladen]" and "[w]hether [Bah] was aware of all of these issues or not, she should have been if she was doing her job as a [district manager] correctly." J.A. 440, 1150. And the district court properly rejected Bah's assertions that such testimonial evidence deserved little or no weight.

5

Bah did not sufficiently combat these legitimate justifications for the adverse employment actions. To demonstrate pretext, Bah can adduce various forms of circumstantial evidence that undermine Sampson Bladen's proffered rationale. *See Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 257 (4th Cir. 2025). This may include evidence that the company's explanation was "inconsistent over time, false, or based on mistakes of fact," *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019), or "[e]vidence that [the] company failed to follow its own disciplinary policies," *Wannamaker-Amos*, 126 F.4th at 260; *see also Hollis v. Morgan State Univ.*, 153 F.4th 369, 383 (4th Cir. 2025).

The district court correctly found that Bah did not make any such showing. First, Bah's allegation of inconsistency fails because the record shows repeated reference to performance issues, particularly those involving Bah's poor communication skills and mismanagement of Store 80. Second, Sampson Bladen provided ample explanation for why it deviated from a progressive disciplinary approach: the conditions at Store 80 were so egregious that immediate termination constituted an appropriate response, not an "'extreme overreaction' to a minor infraction." *Wannamaker-Amos*, 126 F.4th at 260 (quoting *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 728 (4th Cir. 2019)).

In sum, the district court's grant of summary judgment on Bah's Title VII claim was appropriate.

## B.

REDA protects employees from "retaliatory action" once they "[f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or

testify or provide information to any person with respect to" various state laws, including the North Carolina Wage and Hour Act. N.C. Gen. Stat. § 95-241(a)(1). In order to succeed on her REDA claim, Bah must make three showings: (1) that she engaged in a statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that a causal nexus exists between the protected activity and the employer's alleged retaliation. *Edwards v. PCS Phosphate Co.*, 812 F. Supp. 2d 689, 693 (E.D.N.C. 2011).

Here, the district court correctly held that making complaints or suggestions to supervisors does not qualify as a protected activity under REDA. And Bah never brought her complaints about store managers' overtime pay to anyone outside her direct chain of supervision. Moreover, most of her "complaints" merely suggested that overtime pay would aid store manager retention; she did not provide evidence that she raised concerns about Sampson Bladen's legal responsibilities. Thus, Bah never made a qualifying complaint under REDA.

## III.

Bah has offered no evidence of pretext in this case. Rather, the record reveals a consistent history of poor communication, a confluence of nightmarish circumstances at Store 80, and a fair allocation of management resources. Therefore, as the district court concluded in its fine opinion, Sampson Bladen remained well within its rights to assign Store 98 to Bah and to terminate her for performance issues. We thus affirm the judgment.

*AFFIRMED*